UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| MILIJA BRKIC, *individually and on behalf of others Similarly situated* | Civil Action No. 22-cv-7029 |
| Plaintiff, | |
| -against- | **COMPLAINT** |
| DUMBO MOVING & STORAGE, INC. and LIOR RACHMANY | JURY TRIAL DEMANDED |
| Defendants. | |

Plaintiff, MILIJA BRKIC, individually and on behalf of others similarly situated, by his

attorneys, BELL LAW GROUP, PLLC, complaining of Defendant, respectfully alleges, upon

information and belief, the following:

## NATURE OF THE ACTION

1.       Plaintiff worked for Defendant as a mover and representative from on or about

September 1, 2018, through January 10, 2022.

2.       Plaintiff brings this action against Defendants for Defendants' failure to pay

Plaintiff minimum wage, overtime wages, spread of hour wages, failure to provide proper

statements with each payment of wages, failure to provide Wage Theft Prevention Act ("**WTPA**")

notifications in violation of the Fair Labor Standards Act ("FLSA") and New York Labor Law

("NYLL") and engaging in activities which created a hostile work environment in violation of

both the New York State Human Rights Law ("NYSHRL") and New York City Human Rights

Law ("NYCHRL").

3.       Defendant Dumbo Moving & Storage, Inc. ("Dumbo") is a moving company which

provides moving services to its clients throughout the State of New York.   As a mover and

1

representative, Plaintiffs duties included, without limitation, booking jobs with clients, office work, packing, and loading client's belongings from their former residence, transporting such property to the new residence, and unloading and setting up furnishings and belongings at the client's new residence.

4.      Throughout his employment, Plaintiff and all others similarly situated were subject to extreme exploitation by the Defendants. Specifically, each week Plaintiff was required to work a strenuous schedule working no less than fifty-five (55) hours per week and as much as one hundred and four (104) hours per week.  Irrespective of the number of hours he worked per week, Plaintiff was paid only on a commission basis when Defendants unilaterally felt like paying Plaintiff which many times amounted to less than minimum wage and was never paid for overtime for any hours worked over forty (40). Plaintiff was also never paid spread of hour wages and was consistently subjected to a hostile work environment based upon his ethnicity.

5.      Many times, Plaintiff and all others similarly situated would be required to start their shifts one (1) hour early and would finish their shifts two (2) hours late due to necessary attendance to clients, telephone calls, and unresolved matters which took place during the day. Plaintiff and all others similarly situated were not compensated for those hours.

6.      Plaintiff now brings this action on behalf of himself, and others similarly situated, for Defendants' failure to pay Plaintiff minimum wage, overtime wages, spread of hour wages, failure to provide proper statements with each payment of wages, failure to provide Wage Theft Prevention Act ("WTPA") notifications in violation of the Fair Labor Standards Act ("FLSA") and New York Labor Law ("NYLL") and engaging in activities which created a hostile work environment in violation of both the New York State Human Rights Law ("NYSHRL") and New York City Human Rights Law ("NYCHRL").

7.      Plaintiff seeks certification of this action as a collective action on behalf of himself, individually, and all other similarly situated employees and former employees of Defendants pursuant to 29 U.S.C. § 216(b).

## PARTIES

8.      During all relevant times herein, Plaintiff was a resident of the County of Kings, State of New York.

9.      Plaintiff is a covered employee within the meaning of the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.* ("FLSA") and New York Labor Law § 160 *et seq.* ("NYLL").

10.      Defendant Dumbo was and still is a domestic corporation organized and existing by virtue of the laws of the State of New York with its principal place of business located at 15 N. Oxford Street, Brooklyn, New York.

11.      Defendant Dumbo was and still is operating and/or doing business as "Dumbo Moving & Storage, Inc."

12.      Defendant Lior Rachmany ("Rachmany") was and still is a resident of the State of New York.

13.      Defendant Rachmany was and still is the chief executive officer, president, principal, officer, director and/or General Manager of Defendant Dumbo.

14.      Defendant Rachmany was and still is in active control and management of Defendant Dumbo and acts directly and indirectly in the interest of the Defendant Dumbo in relation to the employees, regulates the employment of persons employed by Defendant Dumbo, and is thus an employer of Plaintiff under the FLSA and NYLL.

15.      Defendants are covered employers within the meaning of the FLSA and the NYLL, and at all relevant times employed the Plaintiff.

## JURISDICTION AND VENUE

16.     This Court has jurisdiction pursuant to 28 U.S.C. § 1331, in that this is an action arising under the FLSA.

17.     This Court has supplemental jurisdiction of the claim arising under the NYLL pursuant to 28 U.S.C. § 1367, in that the New York State law claims are so closely related to Plaintiffs FLSA claims as to form the same case or controversy under Article III of the United States Constitution.

18.     Venue is proper in this judicial district under 28 U.S.C. § 1391, as a substantial part of the events and omissions giving rise to the claims occurred in this judicial district, and Defendants conduct substantial business within this judicial district.

## COMMON FACTS

19.     Defendants are the owners and/or operators of a moving company known as "Dumbo Moving & Storage, Inc." located at 15 North Oxford Street, Brooklyn, New York.

20.     Defendants have operated Dumbo for over sixteen (16) years and have employed in excess of one hundred (100) workers.

21.     Plaintiff worked for Defendants as a mover and representative from September 1, 2018, through January 10, 2022.

22.     Upon Plaintiff commencing employment with Defendants, Plaintiff was told by Defendants that he would need to open his own "dummy" company so that he could be paid as an independent contractor.

23.     In fact, Defendants directly opened companies for Plaintiff, as well as all of their other employees so that the employees could be paid as independent contractors and so that Defendants could avoid payroll taxes and the payment requirements of employees under both the

FLSA as well as New York State laws.

24.     Throughout his employment, Plaintiff, and all other similarly situated employees and former employees were subject to extreme exploitation by the Defendants.  Specifically, each week Plaintiff was required to work a strenuous schedule working no less than fifty-five (55) hours per week and as much as one hundred and four (104) hours per week.  Irrespective of the number of hours he worked per week, Plaintiff was paid only on a commission basis when Defendants felt like paying Plaintiff which many times amounted to less than minimum wage and was never paid for overtime for any hours worked over forty (40). Plaintiff was also never paid spread of hour wages and was consistently subjected to a hostile work environment based upon his ethnicity.

25.     Plaintiff, and all other similarly situated employees and former employees were paid commissions based upon the whims of Defendants which were not paid with any type of consistency.

26.     Furthermore, upon the whims of Defendants, Defendants would take deductions out of any payments made to Plaintiff and other similarly situated employees and former employees subjectively for things such as, but not limited to, a bad customer review.   These deductions and other fixed monthly deductions were taken without the consent of Plaintiff or others similarly situated.

*Individual Plaintiff*

27.     Irrespective of the number of hours he worked per week, Plaintiff and other similarly situated employees and former employees were not paid any overtime pay.  In fact, below is a listing of the hours worked and the number of hours of overtime.  Any payment received by Plaintiff was below minimum wage and would not include any type of overtime for hours worked over forty hours per week:

Plaintiffs Time                                          Overtime

### 2018

| | | |
|---|---|---|
| 9/1/2018 | 8.5hours | |
| Week of 9/2 to 9/8 | 55 hours | 15 hours |
| Week of 9/9 to 9/15 | 56 hours | 16 hours |
| Week of 9/16 to 9/22 | 56 hours | 16 hours |
| Week of 9/23 to 9/29 | 56 hours | 16 hours |
| Week of 9/30 to 10/6 | 86 hours | 46 hours |
| Week of 10/7 to 10/13 | 91 hours | 51 hours |
| Week of 10/14 to 10/20 | 91 hours | 51 hours |
| Week of 10/21 to 10/27 | 94 hours | 54 hours |
| Week of 10/28 to 11/3 | 105 hours | 65 hours |
| Week of 11/4 to 11/10 | 93 hours | 53 hours |
| Week of 11/11 to 11/17 | 91 hours | 51 hours |
| Week of 11/18 to 11/24 | 91 hours | 51 hours |
| Week of 11/25 to 12/1 | 102 hours | 62 hours |
| Week of 12/2 to 12/8 | 97 hours | 57 hours |
| Week of 12/9 to 12/15 | 91 hours | 51 hours |
| Week of 12/16 to 12/22 | 91 hours | 51 hours |
| Week of 12/23 to 12/29 | 98 hours | 58 hours |
| Week of 12/30 to 1/5/19 | 97 hours | 57 hours |

### 2019

| | | |
|---|---|---|
| Week of 1/6 to 1/12 | 85 hours | 45 hours |
| Week of 1/13 to 1/19 | 88 hours | 48 hours |
| Week of 1/20 to 1/26 | 87 hours | 47 hours |
| Week of 1/27 to 2/2 | 101 hours | 61 hours |
| Week of 2/3 to 2/9 | 92 hours | 52 hours |
| Week of 2/10 to 2/16 | 85 hours | 45 hours |
| Week of 2/17 to 2/23 | 88 hours | 48 hours |
| Week of 2/24 to 3/2 | 97 hours | 57 hours |
| Week of 3/3 to 3/9 | 95 hours | 55 hours |
| Week of 3/10 to 3/16 | 91 hours | 51 hours |
| Week of 3/17 to 3/23 | 91 hours | 51 hours |
| Week of 3/24 to 3/30 | 100 hours | 60 hours |
| Week of 3/31 to 4/6 | 102 hours | 62 hours |
| Week of 4/7 to 4/13 | 84 hours | 44 hours |
| Week of 4/14 to 4/20 | 80 hours | 40 hours |
| Week of 4/21 to 4/27 | 80 hours | 40 hours |
| Week of 4/28 to 5/4 | 89 hours | 49 hours |
| Week of 5/5 to 5/11 | 84 hours | 44 hours |
| Week of 5/12 to 5/18 | 84 hours | 44 hours |

6

| | | |
|---|---|---|
| Week of 5/19 to 5/25 | 85 hours | 45 hours |
| Week of 5/26 to 6/1 | 90 hours | 50 hours |
| Week of 6/2 to 6/8 | 87 hours | 47 hours |
| Week of 6/9 to 6/15 | 84 hours | 44 hours |
| Week of 6/16 to 6/22 | 84 hours | 44 hours |
| Week of 6/23 to 6/29 | 89 hours | 49 hours |
| Week of 6/30 to 7/6 | 104 hours | 64 hours |
| Week of 7/7 to 7/13 | 84 hours | 44 hours |
| Week of 7/14 to 7/20 | 84 hours | 44 hours |
| Week of 7/21 to 7/27 | 87 hours | 47 hours |
| Week of 7/28 to 8/3 | 90 hours | 50 hours |
| Week of 8/4 to 8/10 | 85 hours | 45 hours |
| Week of 8/11 to 8/17 | 84 hours | 44 hours |
| Week of 8/18 to 8/24 | 84 hours | 44 hours |
| Week of 8/25 to 8/31 | 90 hours | 50 hours |
| Week of 9/1 to 9/7 | 103 hours | 63 hours |
| Week of 9/8 to 9/14 | 84 hours | 44 hours |
| Week of 9/15 to 9/21 | 84 hours | 44 hours |
| Week of 9/22 to 9/28 | 85 hours | 45 hours |
| Week of 9/29 to 10/5 | 83 hours | 43 hours |
| Week of 10/6 to 10/12 | 72 hours | 32 hours |
| Week of 10/13 to 10/19 | 72 hours | 32 hours |
| Week of 10/20 to 10/26 | 74 hours | 34 hours |
| Week of 10/27 to 11/2 | 84 hours | 44 hours |
| Week of 11/3 to 11/9 | 74 hours | 34 hours |
| Week of 11/10 to 11/16 | 72 hours | 32 hours |
| Week of 11/17 to 11/23 | 72 hours | 32 hours |
| Week of 11/24 to 11/30 | 81 hours | 41 hours |
| Week of 12/1 to 12/7 | 80 hours | 40 hours |
| Week of 12/8 to 12/14 | 72 hours | 32 hours |
| Week of 12/15 to 12/21 | 72 hours | 32 hours |
| Week of 12/22 to 12/28 | 77 hours | 37 hours |
| Week of 12/29 to 1/4 | 81 hours | 41 hours |

**2020**

| | | |
|---|---|---|
| Week of 1/5 to 1/11 | 72 hours | 32 hours |
| Week of 1/12 to 1/18 | 72 hours | 32 hours |
| Week of 1/19 to 1/25 | 74 hours | 34 hours |
| Week of 1/26 to 2/1 | 89 hours | 49 hours |
| Week of 2/2 to 2/8 | 88 hours | 48 hours |
| Week of 2/9 to 2/15 | 70 hours | 30 hours |
| Week of 2/16 to 2/22 | 68 hours | 28 hours |

| | | |
|---|---|---|
| Week of 2/23 to 2/29 | 81 hours | 41 hours |
| Week of 3/1 to 3/7 | 94 hours | 54 hours |
| Week of 3/8 to 3/14 | 70 hours | 30 hours |
| Week of 3/15 to 3/21 | 68 hours | 28 hours |
| Week of 3/22 to 3/28 | 79 hours | 39 hours |
| Week of 3/29 to 4/4 | 86 hours | 46 hours |
| Week of 4/5 to 4/11 | 80 hours | 40 hours |
| Week of 4/12 to 4/18 | 84 hours | 44 hours |
| Week of 4/19 to 4/25 | 84 hours | 44 hours |
| Week of 4/26 to 5/2 | 81 hours | 41 hours |
| Week of 5/3 to 5/9 | 84 hours | 44 hours |
| Week of 5/10 to 5/16 | 76 hours | 36 hours |
| Week of 5/17 to 5/23 | 76 hours | 36 hours |
| Week of 5/24 to 5/30 | 80 hours | 40 hours |
| Week of 5/31 to 6/6 | 98 hours | 58 hours |
| Week of 6/7 to 6/13 | 80 hours | 40 hours |
| Week of 6/14 to 6/20 | 80 hours | 40 hours |
| Week of 6/21 to 6/27 | 79 hours | 39 hours |
| Week of 6/28 to 7/4 | 85 hours | 45 hours |
| Week of 7/5 to 7/11 | 80 hours | 40 hours |
| Week of 7/12 to 7/18 | 80 hours | 40 hours |
| Week of 7/19 to 7/25 | 82 hours | 42 hours |
| Week of 7/26 to 8/1 | 80 hours | 40 hours |
| Week of 8/2 to 8/8 | 82 hours | 42 hours |
| Week of 8/9 to 8/15 | 76 hours | 36 hours |
| Week of 8/16 to 8/22 | 76 hours | 36 hours |
| Week of 8/23 to 8/29 | 79 hours | 39 hours |
| Week of 8/30 to 9/5 | 104 hours | 64 hours |
| Week of 9/6 to 9/12 | 77 hours | 37 hours |
| Week of 9/13 to 9/19 | 81 hours | 41 hours |
| Week of 9/20 to 9/26 | 81 hours | 41 hours |
| Week of 9/27 to 10/3 | 82 hours | 42 hours |
| Week of 10/4 to 10/10 | 71 hours | 31 hours |
| Week of 10/11 to 10/17 | 72 hours | 32 hours |
| Week of 10/18 to 10/24 | 70 hours | 30 hours |
| Week of 10/25 to 10/31 | 80 hours | 40 hours |
| Week of 11/1 to 11/7 | 90 hours | 50 hours |
| Week of 11/8 to 11/14 | 71 hours | 31 hours |
| Week of 11/15 to 11/21 | 70 hours | 30 hours |
| Week of 11/22 to 11/28 | 75 hours | 35 hours |
| Week of 11/29 to 12/5 | 79 hours | 39 hours |
| Week of 12/6 to 12/12 | 71 hours | 31 hours |
| Week of 12/13 to 12/19 | 71 hours | 31 hours |

| | | |
|---|---|---|
| Week of 12/20 to 12/26 | 74 hours | 34 hours |
| Week of 12/27 to 1/2 | 82 hours | 42 hours |

### 2021

| | | |
|---|---|---|
| Week of 1/3 to 1/9 | 76 hours | 36 hours |
| Week of 1/10 to 1/16 | 72 hours | 32 hours |
| Week of 1/17 to 1/23 | 72 hours | 32 hours |
| Week of 1/24 to 1/30 | 87 hours | 47 hours |
| Week of 1/31 to 2/6 | 85 hours | 45 hours |
| Week of 2/7 to 2/13 | 72 hours | 32 hours |
| Week of 2/14 to 2/20 | 72 hours | 32 hours |
| Week of 2/21 to 2/27 | 78 hours | 38 hours |
| Week of 2/28 to 3/6 | 85 hours | 45 hours |
| Week of 3/7 to 3/13 | 58 hours | 18 hours |
| Week of 3/14 to 3/20 | 68 hours | 28 hours |
| Week of 3/21 to 3/27 | 73 hours | 33 hours |
| Week of 3/28 to 4/3 | 90 hours | 50 hours |
| Week of 4/4 to 4/10 | 84 hours | 44 hours |
| Week of 4/11 to 4/17 | 80 hours | 40 hours |
| Week of 4/18 to 4/24 | 80 hours | 40 hours |
| Week of 4/25 to 5/1 | 84 hours | 44 hours |
| Week of 5/2 to 5/8 | 85 hours | 45 hours |
| Week of 5/9 to 5/15 | 84 hours | 44 hours |
| Week of 5/16 to 5/22 | 84 hours | 44 hours |
| Week of 5/23 to 5/29 | 88 hours | 48 hours |
| Week of 5/30 to 6/5 | 90 hours | 50 hours |
| Week of 6/6 to 6/12 | 84 hours | 44 hours |
| Week of 6/13 to 6/19 | 84 hours | 44 hours |
| Week of 6/20 to 6/26 | 87 hours | 47 hours |
| Week of 6/27 to 7/3 | 90 hours | 50 hours |
| Week of 7/4 to 7/10 | 86 hours | 46 hours |
| Week of 7/11 to 7/17 | 84 hours | 44 hours |
| Week of 7/18 to 7/24 | 84 hours | 44 hours |
| Week of 7/25 to 7/31 | 90 hours | 50 hours |
| Week of 8/1 to 8/7 | 103 hours | 63 hours |
| Week of 8/8 to 8/14 | 78 hours | 38 hours |
| Week of 8/15 to 8/21 | 81 hours | 41 hours |
| Week of 8/22 to 8/28 | 83 hours | 43 hours |
| Week of 8/29 to 9/4 | 85 hours | 45 hours |
| Week of 9/5 to 9/11 | 66 hours | 26 hours |
| Week of 9/12 to 9/18 | Vacation | 0 hours |
| Week of 9/19 to 9/25 | Vacation | 0 hours |
| Week of 9/26 to 10/2 | Vacation | 0 hours |

| | | |
|---|---|---|
| Week of 10/3 to 10/9 | 84 hours | 44 hours |
| Week of 10/10 to 10/16 | 72 hours | 32 hours |
| Week of 10/17 to 10/23 | 72 hours | 32 hours |
| Week of 10/24 to 10/30 | 81 hours | 41 hours |
| Week of 10/31 to 11/6 | 94 hours | 54 hours |
| Week of 11/7 to 11/13 | 72 hours | 32 hours |
| Week of 11/14 to 11/20 | 72 hours | 32 hours |
| Week of 11/21 to 11/27 | 75 hours | 35 hours |
| Week of 11/28 to 12/4 | 83 hours | 43 hours |
| Week of 12/5 to 12/11 | 72 hours | 32 hours |
| Week of 12/12 to 12/18 | 74 hours | 34 hours |
| Week of 12/19 to 12/25 | 74 hours | 34 hours |
| Week of 12/26 to 1/1 | 81 hours | 41 hours |

**2022**

| | | | |
|---|---|---|---|
| Week of 1/2 to 1/8 | 90 hours | | 50 hours |
| Week of 1/9 to 1/15 | 12 hours | Fired on 1/10 | 0 hours |

28.     At all relevant times, Defendant Rachmany was responsible for hiring and firing, supervising, creating work schedules, determining rates of pay and assigning work tasks for Plaintiff and all others similarly situated at Defendant Dumbo.

29.     At all relevant times, each of the Defendants maintained control, oversight, and authority over the Plaintiff, and all other similarly situated employees in the terms and conditions of Plaintiff's employment and payment of wages and were Plaintiff's employer as defined under the FLSA and NYLL.

30.     The work performed by Plaintiff and all other similarly situated employees was non-exempt work, as that term is used and defined in the U.S. Department of Labor's (DOL) regulations promulgated under the FLSA and NYLL.

31.     Plaintiff was required to be paid a minimum wage rate of (a) $13.00 per hour for all hours worked from September 1, 2018, through December 31, 2018, (b) $15.00 per hour from January 1, 2019, through Plaintiff's termination on January 10, 2022, pursuant to NYLL § 652.

32.     Defendants regularly failed to pay Plaintiff and all other similarly situated employees the applicable minimum wage throughout their employment in violation of the FLSA and NYLL.

33.     Plaintiff and all others similarly situated were entitled to be paid at least one and one-half times their respective regular rate of pay and/or the minimum wage rate for each hour in excess of forty (40) hours that Plaintiff and all others similarly situated worked in any workweek pursuant to the FLSA § 207 and 12 NYCRR § 142-2.2.

34.     Throughout his employment, Plaintiff worked in excess of forty (40) hours per workweek and was entitled to receive overtime wages.

35.     At no time during his employment was Plaintiff and all other similarly situated employees paid one and one-half times their regular hourly work rate and/or the minimum wage rate for any hours that Plaintiff worked in excess of forty (40) per workweek, in violation of the FLSA and NYLL.

36.     Plaintiff and all other similarly situated employees were entitled to be paid one additional hour's pay at the minimum wage rate for every day that Plaintiff worked a spread of hours that exceeded ten (10) hours or a shift in excess of ten (10) hours, pursuant to 12 NYCRR § 142-2.4.

37.     Throughout his employment, Plaintiff and all other similarly situated employees worked shifts in excess of ten (10) hours per day and were entitled to receive spread of hours wages.

38.     Throughout his employment, Plaintiff and all other similarly situated employees were not paid an additional hour's pay at the basic minimum hourly wage rate for every day that Plaintiff worked a spread of hours that exceeded ten (10) hours, or a shift in excess of ten (10)

hours, in violation of the NYLL and NYCRR.

39.     At all relevant times, Plaintiff and all other similarly situated employees were entitled to wage statements indicating the regular and overtime rate of pay, the basis of the rate of pay, the dates covered by the payment, the name, address and phone number of the employer, and itemized allowances and deductions.

40.     At all relevant times, Plaintiff and all other similarly situated employees were entitled to Wage Theft Prevention Act notifications.

41.     At no time during his employment were Plaintiff and all other similarly situated employees provided with wage statements and WTPA notifications.

42.     Throughout Plaintiffs employment, Defendants would provide Plaintiff and all other similarly situated employees with sums of money which were to be provided to other employees who had not yet set up their "dummy" companies.

43.     Upon receipt of this money, Defendants ordered Plaintiff to provide the money to these other employees without "dummy" companies so that it would not appear that Defendants were paying employees and could maintain the charade that all of their employees were independent contractors.

44.     Defendants intentionally misclassified Plaintiff and other employees similarly situated as independent contractors.

## FEDERAL COLLECTIVE ACTION ALLEGATIONS

45.     Plaintiff brings this action on behalf of himself and all other persons who were or are employed by Defendants pursuant to 29 U.S.C. §216(b).

46.     Employees are "similarly situated" for purposes of FLSA collective wage suits if they are subject to a common policy, plan, or design.

12

47.     At all relevant times, Plaintiff and other members of the class were similarly situated in that they had substantially similar job requirements and pay provisions, and have been subject to Defendants' common practices, policies, programs, procedures, protocols and plans including willfully failing and refusing to pay them the required minimum wage, willfully failing to provide overtime, and willfully failing to keep records under the FLSA.

48.     Plaintiff brings the FLSA claims on behalf of himself and others similarly situated, namely employees of Defendants who worked as moving staff and in the office from a date of three years prior to the date of the filing of this complaint to the date of final judgment in this matter, who were not paid overtime wages or hours worked in excess of forty (40) hours per week, and/or did not receive minimum wage for the hours worked.  Such class shall hereinafter be referred to as the FLSA Class.

49.     Upon information and belief, this class consists of one hundred (100) or more similarly situated individuals who have not been paid overtime wages and/or minimum wage who would benefit from the issuance of a court-supervised notice of the lawsuit and the opportunity to join the lawsuit.

50.     Defendants have failed to pay overtime and minimum wage to employees other than those in this collective group, and Plaintiff reserves the right to broaden their definition of the collective group and/or add subgroups to this claim as additional members are discovered.

51.     Defendants are liable under the FLSA for, *inter ali,* failing to properly compensate Plaintiff and others similarly situated.

52.     Those similarly situated potential class members are known to Defendants, are readily identifiable, and can be located through Defendants' records.

## STATE CLASS ACTION ALLEGATIONS

53.     Plaintiff brings the state law claims on behalf of himself and others similarly situated as a representative of a class of all non-exempt workers employed by Defendants within the six years prior to the filing of this complaint.

54.     Pursuant to Rule 23 of the Federal Rules of Civil Procedure, for purposes of the state law claims, Plaintiff seeks the certification of a class of all persons who, during the relevant time period of the six years prior to the filing of this Complaint to the date of final judgment in this matter, have been employed by Defendants as movers and office staff, were not paid the required minimum wage; worked overtime and were not paid one and one-half times the minimum wage rate or hourly rate of pay; worked shifts in excess of ten (10) hours and did not receive spread of hours wages of one additional hour at the minimum wage rate; were not provided wage payment statements; and were not provided with notices of pay rate upon the commencement of their employment (hereinafter referred to as the "Brkic Class").

55.     Upon information and belief, the Brkic Class includes over one hundred (100) similarly situated individuals who have not been paid minimum wage; overtime wages, spread of hours wages; and who have not received wage payment statements or wage theft prevention act notifications, and who would benefit from the issuance of a court-supervised notice of the lawsuit and the opportunity to join the lawsuit.

56.     The Brkic Class is so numerous as to make it impractical to join all members of the class as Plaintiffs.

57.     There are questions of law and fact common to all members of the class and those questions predominate over any question affecting only individual class members. Defendants

have acted on grounds generally applicable to all class members, in that Defendants' acts and omissions constitute a violation of the wage laws of the State of New York.

58.    Common questions of law and fact include, but are not limited to, the following:

    a.    Whether Defendants have consistently failed to pay Plaintiff and class members the required minimum wage under the NYLL;

    b.    Whether Defendants have consistently failed to pay Plaintiff and class members overtime wages at one and one-half times their regular rate of pay as required by the NYLL;

    c.    Whether Defendants have consistently failed to pay Plaintiff and class members spread of hours wages of one additional hour at the minimum wage rate for shifts in excess of ten (10) hours in a workday as required by the NYLL;

    d.    Whether Defendants have failed to provide Plaintiff and class members proper notice of their rate of pay and basis thereof at the time of hire as required by the NYLL;

    e.    Whether Defendants have failed to provide appropriate wage statements to Plaintiff and others similarly situated with each payment of wages as required by NYLL; and

    f.    Whether Defendants have, in failing to make required payments to Plaintiff and others similarly situated, acted willfully and with the intent of depriving members of the class of such compensation.

59.    Plaintiffs overtime wages, spread of hours wages, wage payment statements and wage rate notification claims and Defendants' anticipated affirmative defenses thereto are typical of the claims of and against all class members.

60.     Plaintiff will fairly and adequately protect the interests of all class members in the prosecution of this action and in the administration of all matters relating to the claims of the class. Plaintiff is similarly situated with, and has suffered similar injuries as, the members of the class Plaintiff seeks to represent.

61.     Plaintiff has retained counsel capable of handling class action suits. Neither Plaintiff nor their counsel have an interest which is in conflict with the class or which might cause them not to vigorously pursue this action.

62.     Pursuant to F.R.C.P. 23(b)(l), class certification is appropriate here because the prosecution of separate actions by class members could result in either inconsistent adjudications establishing incompatible pay practices or could, as a practical matter, dispose of the legal claims of class members not parties to such separate adjudications.

63.     Pursuant to F.R.C.P. 23(b)(3), class certification is appropriate here because questions of law or fact common to members of the class predominate over any questions affecting only individual members and because a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

## AS AND FOR THE FIRST CAUSE OF ACTION
*(Minimum Wage Under the FLSA)*

64.     Plaintiff repeats and realleges each and every allegation in the preceding paragraphs with the same force and effect as if fully set forth herein.

65.     At all relevant times, Plaintiff, and all those similarly situated were employees of the Defendants within the meaning of 29 U.S.C. § 203(e), and Defendants employed Plaintiff and all those similarly situated within the meaning of 29 U.S.C. § 203(g).

66.     As the Defendants shared control of the services of the Plaintiff and the FLSA Class Members, Defendants are a single "employer" as defined by the Fair Labor Standards Act.

67.     At all relevant times, Defendants were engaged in commerce and/or the production or sale of goods for commerce within the meaning of 29 U.S.C. §§ 203(e), (m) and 206(a).

68.     At all relevant times, Defendants annual volume of business exceeds $500,000.00 and thus subjects Defendants to the requirements of the FLSA.

69.     At all relevant times, Defendants were subject to the minimum wage requirements set forth in the FLSA, 29 U.S.C. § 201 *et seq.*

70.     Pursuant to the FLSA, 29 U.S.C. § 201 *et seq.,* non-exempt employees are required to be paid a minimum wage rate of $7.25 per hour for each hour worked in any workweek, however since New York State provides for a higher minimum wage, Plaintiff is entitled to the higher of the required minimum wages.

71.     Defendants violated 29 U.S.C. § 206(a) by failing to compensate Plaintiff and the FLSA Class Members the applicable minimum hourly wage.

72.     As a result of Defendants' violation of the law and failure to pay Plaintiff and the FLSA Class Members the required minimum wage, Plaintiff has been damaged and is entitled to recover from Defendants all wages due, along with all reasonable attorney fees, interest, and costs, pursuant to 29 U.S.C. § 216.

73.     Defendants willfully, knowingly, and intentionally failed to compensate Plaintiff and the FLSA Class Members the required minimum wage.

74.     Defendants have not made a good faith effort to comply with the FLSA with respect to the compensation of Plaintiff and the FLSA Class Members.

75.     Due to Defendants' intentional and willful failure to pay Plaintiff and the FLSA Class Members the applicable minimum wage, the Plaintiff and the FLSA Class Members are entitled to additional liquidated damages equal to one hundred percent of the total amount of wages due, pursuant to 29 U.S.C. § 216(b).

## AS AND FOR THE SECOND CAUSE OF ACTION
*(Minimum Wage Under the NYLL)*

76.     Plaintiff repeats and realleges each and every allegation in the preceding paragraphs with the same force and effect as if fully set forth herein.

77.     At all relevant times, Plaintiff and the Brkic Class Members were employees and Defendants were employers within the meaning of NYLL §§ 190, 651 and 652.

78.     At all relevant times, Defendants were subject to the minimum wage provisions of Article 19 of the NYLL.

79.     Pursuant to NYLL § 652, Plaintiff and the Brkic Class Members, as non-exempt employee, were required to be paid a minimum wage rate of (a) $13.00 per hour for all hours worked from September 1, 2018, through December 31, 2018, and (b) $15.00 per hour from January 1, 2019, through Plaintiffs termination on January 10, 2022.

80.     Defendants violated NYLL § 652 by failing to compensate Plaintiff and the Brkic Class Members the applicable minimum hourly wage.

81.     As a result of Defendants' violations of the law and failure to pay Plaintiff and the Brkic Class Members the required minimum wage, Plaintiff and the Brkic Class Members have been damaged and are entitled to recover from Defendants all wages due, along with all reasonable attorney fees, interest, and costs, pursuant to NYLL §§ 198 and 663.

82.     Defendants willfully, knowingly, and intentionally failed to compensate Plaintiff

and the Brkic Class Members the required minimum wage.

83.     Defendants have not made a good faith effort to comply with the NYLL with respect to the compensation of Plaintiff and the Brkic Class Members.

84.     Due to Defendants' intentional and willful failure to pay Plaintiff and the Brkic Class Members the applicable minimum wage, Plaintiff and the Brkic Class Members are entitled to additional liquidated damages equal to one hundred percent of the total amount of wages due, pursuant to NYLL §§ 198 and 663.

**AS AND FOR THE THIRD CAUSE OF ACTION**
*(Overtime under the FLSA)*

85.     Plaintiff repeats and realleges each and every allegation in the preceding paragraphs with the same force and effect as if fully set forth herein.

86.     At all relevant times, Defendants were subject to the overtime wage requirements set forth in the FLSA, 29 U.S.C. § 201 *et seq.*

87.     Defendants expected Plaintiff and the FLSA Class Members to work more than forty (40) hours a week, and Plaintiff and the FLSA Class Members regularly worked more than forty (40) hours a week throughout his employment.

88.     At no time have the Defendants paid Plaintiff and the FLSA Class Members a rate of one- and one-half times the minimum wage rate for all hours worked in excess of forty (40) hours per week.

89.     Defendants willfully, knowingly, and intentionally did not compensate Plaintiff and the FLSA Class Members for overtime at a rate of one- and one-half times their hourly rate of pay and/or the minimum wage rate for all hours worked in excess of forty (40) hours a week.

90.     As a result of Defendants' violation of the law and failure to pay Plaintiff and the FLSA Class Members required overtime wages, Plaintiff and the FLSA Class Members have been damaged and are entitled to recover from Defendants all wages due, along with all reasonable attorney fees, interest, and costs, pursuant to 29 U.S.C. § 216(b).

91.     As Defendants did not have a good faith basis to believe that their failure to pay overtime wages to Plaintiff and the FLSA Class Members was in compliance with the law, Plaintiff and the FLSA Class Members are entitled to additional damages equal to one hundred percent of the total amount of wages due, pursuant to 29 U.S.C. § 216(b).

## AS AND FOR THE FOURTH CAUSE OF ACTION
*(Overtime under the NYLL)*

92.     Plaintiff repeats and realleges each and every allegation in the preceding paragraphs with the same force and effect as if fully set forth herein.

93.     At all relevant times, Defendants were subject to the overtime wage requirements set forth in Article 19 of the NYLL.

94.     Pursuant to NYLL § 650 *et seq.* and 12 NYCRR 142-2.2, non-exempt employees are required to be paid one and one-half times the employees' regular rate of pay and/or the minimum wage rate for any hours in excess of forty (40) worked in any workweek.

95.     Defendants expected Plaintiff and the Brkic Class Members to work more than forty (40) hours a week, and Plaintiff and the Brkic Class Members regularly worked more than forty (40) hours a week throughout their employment.

96.     At no time have the Defendants paid Plaintiff and the Brkic Class Members a rate of one and one-half times their hourly rate of pay and/or the minimum wage rate for all of the hours worked in excess of forty (40) hours per week.

20

97.     Defendants willfully, knowingly, and intentionally did not compensate Plaintiff and the Brkic Class Members for overtime at a rate of one- and one-half times their hourly rate of pay and/or the minimum wage rate for all hours worked in excess of forty (40) hours a week.

98.     As a result of Defendants' violation of the law and failure to pay Plaintiff and the Brkic Class Members the required regular and overtime wages, Plaintiff and the Brkic Class Members have been damaged and are entitled to recover from Defendants all wages due, along with all reasonable attorneys' fees, interest, and costs, pursuant to NYLL § 198 and 12 NYCRR 142-2.2.

99.     As Defendants did not have a good faith basis to believe that their failure to pay overtime wages to Plaintiff and the Brkic Class Members was in compliance with the law, Plaintiff and the Brkic Class Members are entitled to additional liquidated damages equal to one hundred percent of the total amount of wages due, pursuant to NYLL § 198.

### AS AND FOR THE FIFTH CAUSE OF ACTION
*(Spread of Hours Under the NYLL)*

100.     Plaintiff repeats and realleges each and every allegation in the preceding paragraphs with the same force and effect as if fully set forth herein.

101.     Pursuant to 12 NYCRR § 142-2.4, non-exempt employees are required to be paid an additional hour's pay at the basic minimum hourly wage rate for every day that the employee works a spread of hours that exceeds ten (10) hours or a shift in excess of ten (10) hours.

102.     Defendants consistently required Plaintiff and the Brkic Class Members to work in excess of ten (10) hours per day each workday.

103.    Defendants failed to pay Plaintiff and the Brkic Class Members one extra hour's pay at the minimum wage rate for every day in which the interval between their start and end time exceeded ten hours in violation of 12 NYCRR § 142-2.4.

104.    Defendants willfully, knowingly, and intentionally did not compensate Plaintiff and the Brkic Class Members one extra hour's pay at minimum wage for every day in which the interval between their start and end times exceeded ten hours.

105.    Plaintiff and the Brkic Class Members are entitled to recover from Defendants the full amount of their unpaid wages originating from the spread of hours provision, along with all reasonable attorneys' fees, interest, and costs pursuant to NYLL § 198.

106.    As Defendants did not have a good faith basis to believe that their failure to pay spread of hours wages to Plaintiff and the Brkic Class Members was in compliance with the law, Plaintiff and the Brkic Class Members are entitled to additional damages equal to one hundred percent of the total amount of wages due, pursuant to NYLL § 198.

## AS AND FOR THE SIXTH CAUSE OF ACTION
*(Wage Payment Statements under the NYLL)*

107.    Plaintiff repeats and realleges each and every allegation in the preceding paragraphs with the same force and effect as if fully set forth herein.

108.    At all relevant times, Defendants failed to provide Plaintiff and the Brkic Class Members with the proper statements with every payment of wages, as required by NYLL § 195(1).

109.    As Defendants failed to provide Plaintiff and the Brkic Class Members with proper statements with every payment of wages as required by NYLL § 195(1), Plaintiff and the Brkic Class Members are entitled to liquidated damages in the amount of $50.00 per day for every work

week in which the violation occurred, up to a maximum of $5,000.00, along with all reasonable attorneys' fees and costs.

## AS AND FOR THE SEVENTH CAUSE OF ACTION
*(Wage Theft Prevention Act Notification Under the NYLL)*

110.    Plaintiff repeats and realleges each and every allegation in the preceding paragraphs with the same force and effect as if fully set forth herein.

111.    Defendants were obligated to provide Plaintiff and the Brkic Class Members with Wage Theft Prevention Act notifications of pay rates beginning upon the commencement of their employment since 2014.

112.    At all relevant times, Defendants failed to provide Plaintiff and the Brkic Class Members with the Wage Theft Prevention Act notifications, as required by NYLL § 195(1).

113.    As Defendants failed to provide Plaintiff and the Brkic Class Members with proper Wage Theft Prevention Act Notices annually since 2014 as required by NYLL § 195, Plaintiff and the Brkic Class Members are entitled to liquidated damages in the amount of $50.00 per week, up to a maximum of $2,500.00, along with all reasonable attorneys' fees and costs.

## AS AND FOR THE EIGHTH CAUSE OF ACTION
*(NYSHRL Hostile Work Environment)*

114.    Plaintiff repeats and realleges each and every allegation in the preceding paragraphs with the same force and effect as if fully set forth herein.

115.    Pursuant to New York State Human Rights Law, N.Y. Exec. Law § 296, it is unlawful for an employer because of an individual's ethnic origin or nationality and/or gender, "to discriminate against such individual in compensation or in terms, conditions, or privileges of employment."

116.    Defendants engaged in activities which created an objectively hostile and abusive working environment for Plaintiff, including, but not limited to, subjecting Plaintiff to derogatory comments about his nationality of Serbian as well as threatening comments and treatment and being subject to derogatory remarks.   Defendants also continually discussed sexual comments throughout Plaintiff's employment.

117.    Such actions included but were not limited to forcing Plaintiff to use the name "Jack" instead of his real name, and constantly subjecting Plaintiff to negative treatment, including shifts and jobs to work based upon his nationality of Serbian and derogatory statements regarding Serbians.

118.    Plaintiff was also subject to continuous comments about Serbian nationals being subject to differential treatment in the United States and being minimalized constantly being referred to as "Russians."

119.    Plaintiff also received numerous emails in which Defendants referred to customers and employees' sexual orientation.   In one example in an email concerning a customer job and possible complaint, Defendants titled the email "I don't think this is happening look at the address-advise with customer-we will be rampaged by a bunch of transvestites."

120.    Defendant would also receive emails of a sexual nature including emails with the subject, "Danny gets all the pussy love," and "parker-no room in dean street-I don't want people to say like pussies 'but you moved it to nj instead of Brooklyn,' let's not be pigs please."

121.    In another instance, Defendants were discussing a complaint made by a customer in internal emails.   Defendant sent an email to multiple recipients stating, "better to catch the guy and feed him his balls."

122.     Plaintiff also received graphic emails with pictures of a sexual nature.  On January 30, 2020, Plaintiff received an email from Defendant management regarding a sales issue with a graphic picture of two flies (insects) having intercourse with the words, "I don't give a Flying Fuck."

123.     In another example, Plaintiff received an email regarding customer scheduling which contained the subject, "9/1 usain thanks for clarifying only moving this time, no anal sex charge, finally a sales rep that cares."

124.     Defendants would also require and advise their employees to be "gay," around customers they believed to be homosexual.  In an email dated May 7, 2019, Defendant Lior advised "I will ask you to be extra gay with her tomorrow.  Act the same towards to her."

125.     Plaintiff also received racist emails and photographs from Defendants including pictures of Islamic people carrying bombs and weapons with the message, "crew looking for work-willing to do stairs, will take any commission, will drive any truck-no problem," as well as photographs of Muslim women in traditional Muslim attire with the message, "tomorrow they will make her pregnant."

126.     Plaintiff was also sent emails regarding the attitude of making complaints which referred to employees as "goat fucker piece of shit."

127.     Plaintiff was told time and time again in a very hostile and threatening way, as were many other employees, that they were "dumbfucks" and "F students" who would "fail approach for anything in life," and that they should just "follow instruction, when we say no more job shut your mouth and do as you told."

128.     Plaintiff also received an email from Defendant Lior dated June 4, 2020 which states "I don't care about if someone wipe their ass or if they wear women's lingerie under their

cloth-I asked a specific question who are the pieces of shit that are pressing-do not respond-"! can't breathe" like retarded pussies,-- direct to the person who need correction."

129.    The treatment of Plaintiff and the environment to which Plaintiff was forced to endure was so objectively hostile, severe and pervasive as to alter the terms and conditions of Plaintiffs employment.

130.    Plaintiff subjectively perceived Defendants' conduct as hostile and abusive.

131.    The motivating factor for the hostile treatment of Plaintiff was Plaintiffs nationality and/or ethnic origin as well as his gender.

132.    But for Plaintiffs nationality and/or ethnic origin and gender, Plaintiff would not have been subject to a hostile work environment.

133.    Defendants' severe and pervasive harassment of Plaintiff was intentional, willful, malicious and in reckless disregard of Plaintiffs rights.

134.    By engaging in the aforesaid acts, Defendants engaged in an unlawful employment practice as defined by N.Y. Exec. Law § 296.

135.    As a result of Defendants' unlawful acts, Plaintiff suffered and continues to suffer severe emotional distress, mental anguish, pain, and suffering.

### AS AND FOR THE NINTH CAUSE OF ACTION
*(NYCHRL Hostile Work Environment)*

136.    Plaintiff repeats and realleges each and every allegation in the preceding paragraphs with the same force and effect as if fully set forth herein.

137.    Plaintiff was an employee of Defendants and Defendants were Plaintiffs employer within the meaning of NYCHRL.

26

138.     The conduct experienced by Plaintiff created an objectively hostile and abusive work environment and were treated less well than other similar employees.

139.     Plaintiff subjectively f o l d the conduct of Defendants as abusive and hostile.

140.     But for Plaintiff's nationrlity and/or ethnic origin and gender, Plaintiff would not have been subject to a hostile work environment.

141.     Defendants' harassment of Plaintiff was intentional, willful, malicious and in reckless disregard of Plaintiff's rights.

142.     As a result of Defendants' unlawful acts, Plaintiff suffered and continues to suffer severe emotional distress, mental anguish, pain, and suffering.

**WHEREFORE,** Plaintiff seeks the following relief:

A.  Declare this action to be maintainable as a collective action pursuant to 29 U.S.C.§ 216, and direct Defendants to provide Plaintiff with a list of all persons who were/are employed by Defendants in similar positions to Plaintiff during the FLSA relevant time period, including all last known addresses, telephone numbers and e-mail addresses of each such persons;

B.  Designate Plaintiff as representative of the FLSA Class;

C.  Designate this action as a class action pursuant to N.Y. CPLR § 901;

D.  Designate Plaintiff as representative of the Brkic Class;

E.  On the First Cause of Action for all wages due, an additional award of one hundred percent of all wages, along with all reasonable attorney fees and costs, in an amount to be determined by this Court but greater than the jurisdictional minimum;

F.  On the Second Cause of Action for all wages due, an additional award of one hundred percent of all wages, along with all reasonable attorney fees and costs, in an amount to be determined by this Court but greater than the jurisdictional minimum;

G.  On the Third Cause of Action for all overtime wages due, an additional award of one hundred percent of all wages, along with all reasonable attorney fees and costs, in an amount to be determined by this Court but greater than the jurisdictional minimum;

H.  On the Fourth Cause of Action for all overtime wages due, an additional award of one hundred percent of all wages, along with all reasonable attorney fees and costs, in an amount to be determined by this Court but greater than the jurisdictional minimum;

I.  On the Fifth Cause of Action, an award for all spread of hours wages due, and award of one hundred percent of all wages, along with reasonable attorney's fees, costs and interest;

J.  On the Sixth Cause of Action for failing to provide proper statements with every payment of wages, liquidated damages in the amount of $50.00 per day for every work week in which the violation occurred, up to a maximum of $5,000.00, along with all reasonable attorney fees and costs, in an amount to be determined by this Court but greater than the jurisdictional minimum;

K.  On the Seventh Cause of Action for failing to provide Wage Theft Prevention Act Notices in an amount of $50.00 per week, up to a maximum of $2,500.00, along with all reasonable attorney fees and costs.

L.  On the Eighth Cause of Action, all compensatory damages, costs, and interest, in an amount to be determined by this Court but greater than the jurisdictional minimum;

M.  On the Ninth Cause of Action, all compensatory damages, costs and interest, in an amount to be determined by this Court but greater than the jurisdictional minimum;

N.  Interest;

0.  Attorneys' fees;

P.  Costs and disbursements; and

Q.  Such other and further relief as is just and proper.


## **JURY DEMAND**

Plaintiff, on behalf of himself and all other similarly situated persons, hereby demands a trial by jury on all issues of fact and damages.


Dated: Syosset, New York
　　　　August 17, 2022

　　　　　　　　　　　　　　　Respectfully submitted,

　　　　　　　　　　　　　　　**BELL LAW GROUP, PLLC**

　　　　　　　　　　　　　　　 /s/ Paul A. Bartels
　　　　　　　　　　　　　　　Paul A. Bartels, Esq.
　　　　　　　　　　　　　　　116 Jackson Avenue
　　　　　　　　　　　　　　　Syosset, NY 11791
　　　　　　　　　　　　　　　516.280.3008
　　　　　　　　　　　　　　　Paul@Belllg.com

　　　　　　　　　　　　　　　*Attorneys for Plaintiff and putative class and collective*