**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

MILIJA BRKIC, *individually and on behalf of others similarly situated*,

    Plaintiff,

-against-

DUMBO MOVING & STORAGE, INC. and LIOR RACHMANY,

    Defendants.

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 1/9/2023

No. 22-cv-07029 (CM)

## DECISION AND ORDER GRANTING DEFENDANTS' MOTION TO COMPEL ARBITRATION

McMahon, J.:

Plaintiff Milija Brkic ("Plaintiff") brought this action alleging wage and hour violations and hostile work environment violations against his former employer Dumbo Moving and Storage, Inc. ("Dumbo Moving") and its chief executive officer Lior Rachmany (together, "Defendants").

Defendants now move this Court, pursuant to the Federal Rules of Civil Procedure as well as the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 3, 4, for an order compelling Plaintiff to arbitrate his claims pursuant to the arbitration agreement he entered into with Dumbo Moving and to dismiss or stay further judicial proceedings. (Dkt. No. 15 at 1).

For the reasons set forth below, that motion is GRANTED.

1

# BACKGROUND

## I.     Factual Background

The following facts are taken from the complaint and documents that were submitted in connection with Defendants' motion to compel arbitration. *See UBS Securities v. Leitner*, No. 17-cv-1365, 2017 WL 5054739, at *1 n.1 (S.D.N.Y. May 12, 2017) (citing *Mullins v. City of New York*, 626 F.3d 47, 52 (2d Cir. 2010)).

Plaintiff worked for Dumbo Moving as a mover and sales representative from September 1, 2018 through January 10, 2022. (Complaint ("Compl.") ¶ 21). Plaintiff alleges that upon commencing employment with Dumbo Moving, he was told that he would need to open his own "dummy" company so that he could be paid as an independent contractor. (*Id.* ¶ 22). On January 13, 2020, Plaintiff signed an arbitration agreement, as part of a larger independent contractor agreement, which required Plaintiff to submit all disputes between Plaintiff and Dumbo Moving to "binding arbitration before an arbitrator and not by way of a court or jury trial." (Dkt. No. 17-1 at § 1; the "Arbitration Agreement").[1] The disputes covered by the Arbitration Agreement were:

> "(i) disputes arising out of or relating to [Plaintiff's] relationship with [Dumbo Moving], including termination of the relationship; (ii) *disputes arising out of or relating to any agreement governing [Dumbo Moving's] engagement of [Plaintiff]*; (iii) disputes arising out of or relating to payments made to [Plaintiff] for services provided; (iv) *disputes arising out of or relating to any other aspect of [Plaintiff's] relationship with [Dumbo Moving], past or present, whether arising out of or under federal, state or local statutory, regulatory and/or common law*; and (v) *disputes arising out of or relating to this Agreement or any portion of this Agreement or its interpretation, enforceability, applicability, unconscionability, arbitrability, or formation, or whether the Agreement or any portion of it is void or voidable*, with the exception noted below in paragraph 1(c), the Class Action Waiver. This Agreement also applies, without limitation, to claims or disputes regarding any *federal, state or local wage-hour law*; trade secrets; unfair competition; compensation; meal or rest periods; expense reimbursement; uniform maintenance; *discrimination or harassment*; and claims arising under the Americans with Disabilities Act, Age Discrimination in Employment Act, Family and Medical Leave Act,

---

[1]     Neither the Complaint nor the Defendants' motion to compel arbitration discusses whether an arbitration agreement existed between the parties prior to January 2020.

***Fair Labor Standards Act***, Title VII of the Civil Rights Act of 1964, Employee Retirement Income Security Act, and ***state or local statutes, if any, addressing the same or similar subject matters***, and all other federal, state or local statutory and common law claims, including claims for breach of contract."

(*Id.* at § 1.a.).

There are a number of types of claims excluded from the claims covered by the Arbitration Agreement, including claims related to workers' compensation, state disability insurance, or unemployment insurance benefits. (*Id.* at § 1.b.).

The Arbitration Agreement includes a class action waiver, which states that: "There will be no right or authority for any claim and/or dispute to be brought, heard or arbitrated as a class, collective or representative action." (*Id.* at § 1.c.).

The Arbitration Agreement states that "the Agreement is governed by the Federal Arbitration Act, (9 U.S.C. §§ 1 et seq.) ("FAA")," however, "in the event the FAA does not apply to a particular dispute . . . the parties agree that the arbitration law of the state where the [Dumbo Moving] facility is located at which [Plaintiff] provides services to [Dumbo Moving] shall govern this Agreement." (*Id.* at § 6).

The Arbitration Agreement has a number of defined terms. In its very first paragraph, the "Parties" to the agreement are identified:

> This Arbitration Agreement ("Agreement") is entered into by and between Dumbo Moving & Storage, Inc., its affiliates, successors, subsidiaries, parent companies, related entities and its officers, owners, shareholders or agents (collectively, the "Company") and **Milija Brkic** (Representative) (collectively, the Company and Representative shall be referred to as the "Parties"), on the following terms and conditions:"

(Dkt. No. 17-1 at p.1).

Put plainly, Dumbo is the "Company;" Brkic is the "Representative;" and Dumbo and Brkic (the Company and the Representative) are the "Parties" to the agreement.

3

On the last page of the Arbitration Agreement, there are two signature lines under the word "AGREED:" One for Dumbo and one for the Sales Representative (Brkic). As noted above, Dumbo and Brkic (as "Sales Representative") are the "Parties" to the Agreement. The signature block also contains a place for Brkic to identify a "Company Name" (presumably the name of a company under which he does business), although no term in the Agreement makes any "Company" other than Dumbo a "Party" to the Arbitration agreement. Plaintiff signed the agreement on behalf of the "Sales Representative" and then identified his affiliated company as VOZD Express, Inc.

AGREED:

Dumbo-Moving and Storage, Inc.
By: _____
Title: _PAYROLL MANAGER_
Date: _01/13/20_

Sales Representative
By: _Milijp Brkic_
Company Name: _VOZD EXPRESS INC_
Date: _01 13 2020_

There is no signature block for VOZD Express Inc. and no indication that VOZD was signing any agreement "by" Brkic. Only the sales representative – an individual, defined earlier as Brkic himself – signed the agreement "by" Brkic.

**II.     Procedural History**

On August 17, 2022, Plaintiff filed his Complaint, on behalf of himself and others similarly situated, against Defendants, asserting claims for wage and hour violations under the Fair Labor Standards Act ("FLSA") and the New York Labor Law ("NYLL"), as well as hostile work environment claims under the New York State Human Rights Law ("NYSHRL"), and New York City Human Rights Law ("NYCHRL"). (Compl. ¶¶ 64-142).

Plaintiff alleges that, throughout his time working for Dumbo Moving, he and all other similarly situated employees were subject to extreme exploitation by Defendants. For example,

4

Plaintiff alleges that he was required to work a strenuous schedule, received less than minimum wage, received no overtime wages and spread of hour wages, and was subjected to a hostile work environment because of his Serbian ethnicity. (*Id.* ¶ 24). Plaintiff also alleges that Dumbo Moving required Plaintiff and other employees to open "dummy" companies for the purpose of ensuring that their employees would be paid as independent contractors and thus to avoid payroll taxes and other payment requirements. (*Id.* ¶ 23).

By a letter dated October 12, 2022, Defendants informed Plaintiff's counsel that Plaintiff had signed an independent contractor agreement with Dumbo Moving, which contained the Arbitration Agreement. (Dkt. No. 15 at 2). After Plaintiff refused to stipulate to stay this action pending arbitration, Defendants moved to compel arbitration in accordance with the Arbitration Agreement and to stay proceedings. (Dkt. No. 14).

## LEGAL STANDARD

Arbitration is a matter of contract, and "the question of whether the parties agreed to arbitrate" – arbitrability – "is to be decided by the court, not the arbitrator." *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 649, 106 S.Ct. 1415, 89 L.Ed.2d 648 (1986). The FAA, which "reflects a liberal federal policy favoring arbitration agreements," *Meyer v. Uber Techs., Inc.*, 868 F.3d 66, 73 (2d Cir. 2017) (internal quotation marks and citation omitted), dictates that any contract containing a binding arbitration provision "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2.

When courts interpret the scope of an arbitration provision, they must apply "a presumption of arbitrability." *AT&T*, 475 U.S. at 650 (internal quotation marks and citation omitted). The presumption reflects the purpose of the FAA: to enact "a liberal federal policy

favoring arbitration agreements, notwithstanding any state substantive or procedural policies to the contrary." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25, 103 S.Ct. 927, 74 L.Ed.2d 765. Therefore, any doubts regarding arbitrability "should be resolved in favor of arbitration." *Id.* at 24-25; *see also AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 346, 131 S.Ct. 1740, 179 L.Ed.2d 742 (2011) ("[O]ur cases place beyond dispute that the FAA was designed to promote arbitration. They have repeatedly described the Act as 'embod[ying] [a] national policy favoring arbitration.") (alteration in original) (quoting *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 443, 126 S.Ct. 1204, 163 L.Ed.2d 1038 (2006)).

When determining whether a dispute should be arbitrated, a court must answer two questions: (1) whether there is a valid agreement to arbitrate, and, if so, (2) whether the subject of the dispute is within the scope of the arbitration agreement. *Nat'l Union Fire Ins. Co. of Pittsburgh v. Belco Petroleum Corp.*, 88 F.3d 129, 135 (2d Cir. 1996). Whether an arbitration agreement exists is a matter of state contract law. *Meyer*, 868 F.3d at 73-74. The party seeking to compel arbitration bears the burden of establishing the existence of an arbitration agreement, although "[t]his burden does not require the moving party to show initially that the agreement would be *enforceable*, merely that one existed." *Hines v. Overstock.com, Inc.*, 380 F. App'x 22, 24 (2d Cir. 2010) (emphasis in original). The Court applies a "standard similar to that applicable for a motion for summary judgment" when deciding a motion to compel arbitration. *Meyer*, 868 F.3d at 74 (internal quotation marks and citation omitted). If the Court determines that the parties have agreed in writing to arbitration, then the Court will stay the proceedings. *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 229 (2d Cir. 2016).

## DISCUSSION

### I. Defendants' Motion to Compel is Granted

#### A. There is a Valid Agreement to Arbitrate Between Dumbo and Brkic

Plaintiff argues that he is not bound by the Arbitration Agreement because he signed on behalf of his company, VOZD Express, Inc., rather than as himself in his individual capacity. (Dkt. No. 21 at 7). As set forth above, Plaintiff did not sign on behalf of VOZD. He signed on behalf of himself, the "Sales Representative" who is identified in the very first paragraph of the Arbitration Agreement as one of the two "Parties" to the Agreement (the other being, not VOZD, but Dumbo). The Agreement clearly and plainly identifies Milija Brkic – not VOZD – as one of the Parties to the Agreement. He is, therefore, a party to the Arbitration Agreement. Brkic may do business through a corporation, but this Arbitration Agreement is not between Dumbo and any corporation. It is between Dumbo and Brkic.

Plaintiff states that he signed the Arbitration Agreement with his name in his capacity as "President" of his company – VOZD Express, Inc. – not as an individual. (Dkt. No. 21 at 7). However, not only does that contradict the express terms of the Agreement (in which Plaintiff, not VOZD, is identified as the "Party" to the Agreement), but it is not supported by the language of the signature block, which does not identify Plaintiff as "President" or suggest that VOZD was signing the Agreement "by" Brkic. In fact, nothing anywhere in the Arbitration Agreement identifies Plaintiff as the "President" of VOZD.

Plaintiff asserts in a declaration submitted together with his opposition papers to the motion to compel arbitration that he had "no intention of being personally bound" by the Arbitration Agreement and that he was "only provided the signature page of the document and was not provided any information as to what [he] was signing on behalf of the company."

7

Unfortunately for Plaintiff, his subjective intention is irrelevant; it is the objective terms of the Agreement that are dispositive, and they are quite clear. "Milija Brkic" the "Sales Representative" is in fact the "Party" to the Agreement. No doubt the Agreement was written this way so that a mover like Plaintiff could not hide behind a solely owned corporation (which VOZD apparently is (*see* Compl. ¶ 22)) in order to avoid arbitration. But the reason why the Agreement was so drafted is really irrelevant; what is relevant is the plain language of the Agreement, which identifies Plaintiff as the party, and the fact that he signed in his capacity as "Sales Representative" – the very capacity in which he is identified as a Party to the Agreement in its opening paragraph.

As an identified Party to the Agreement, who signed in his capacity as a Party (Sales Representative), Brkic is bound by the Agreement. He must arbitrate all arbitrable disputes. End of story.[2]

### B. The "Gateway" Dispute Must Be Resolved by the Arbitrator

Plaintiff next argues that the Arbitration Agreement between himself and Dumbo Moving is "void as created for an illegal purpose." (Dkt. No. 21 at 10). As support, Plaintiff reasserts allegations in his Complaint, which state that Defendants forced Plaintiff to create a corporation to misclassify him and other employees as independent contractors and avoid minimum wage

---

[2] Because it is perfectly clear that Plaintiff as the Sales Representative is a Party to the Agreement, and that he signed the Agreement in his capacity as a Party (whatever his unexpressed subjective intention), it is not necessary to address the alternative argument that Plaintiff is estopped from avoiding arbitration because he directly benefitted from the terms of the independent contractor agreement containing the Arbitration Agreement. However, he would lose on an estoppel theory as well. "Under the estoppel theory, a [person] knowingly exploiting an agreement with an arbitration clause can be estopped from avoiding arbitration despite having never signed the agreement." *MAG Portfolio Consult, GMBH v. Merlin Biomed Grp. LLC*, 268 F.3d 58, 61 (2d Cir. 2001) (internal citations and brackets omitted). Here, Plaintiff provided services to Dumbo Moving pursuant to the independent contractor agreement and received payments from his company, VOZD Express, Inc. – of which he was the sole owner – for providing such services. Therefore, Plaintiff knowingly accepted the benefits of the independent contractor agreement and must submit to arbitration. *See, e.g., Buckley v. Nat'l Football League*, No. 18 CIV. 3309 (LGS), 2018 WL 6198367, at *3 (S.D.N.Y. Nov. 16, 2018); *Johnston v. Electrum Partners LLC*, No. 17 Civ. 7823, 2018 WL 3094918, at *8 (S.D.N.Y. June 21, 2018).

and overtime laws. (*Id.*; Compl. ¶ 23). Plaintiff then asserts that he was forced into signing the Arbitration Agreement to further ensure Defendants' employees were misclassified as independent contractors and to ensure they could not come to court to enforce their rights. (Dkt. No. 21 at 12).

Because Plaintiff is a party to the Arbitration Agreement, any dispute over the validity of that Agreement – including whether it was forced on him and whether the Agreement violates public policy – are so-called "gateway" issues that must, per the terms of that Agreement, be decided by an arbitrator. Specifically, it states that "disputes arising out of or relating to this Agreement or any portion of this Agreement *or its interpretation, enforceability, applicability, unconscionability, arbitrability, or formation, or whether the Agreement or any portion of it is void or voidable*" are claims covered by the Arbitration Agreement. (Dkt. No. 17-1 at § 1.a.).

In *Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 66 (2010), the Supreme Court considered an arbitration agreement that contained a delegation provision stating that "The Arbitrator, and not any federal, state, or local court or agency, shall have exclusive authority to resolve any dispute relating to the interpretation, applicability, enforceability or formation of this Agreement including, but not limited to any claim that all or any part of this Agreement is void or voidable." The employee, who was a party to the arbitration agreement, opposed the employer's motion to compel arbitration on the ground that the arbitration agreement was unconscionable. However, the Supreme Court held that this dispute regarding the validity of the arbitration agreement should itself be decided by the arbitrator, noting that "parties can agree to arbitrate 'gateway' questions of 'arbitrability,' such as whether the parties have agreed to arbitrate or whether their agreement covers a particular controversy." *Id.* at 69. The Court distinguished between a challenge to a delegation provision specifically – which should be heard

9

by a court to determine whether the delegation provision itself was enforceable before compelling arbitration – and a challenge to the validity of an arbitration agreement as a whole – which, per the delegation provision, must be left for the arbitrator. *Id.* at 72.

Here, as in *Rent-A-Ctr.*, the relevant Arbitration Agreement contains a delegation provision that unambiguously delegates to the arbitrator disputes regarding the Arbitration Agreement's interpretation, applicability, enforceability or formation, including whether any part of the Agreement is void or voidable. Moreover, as in *Rent-A-Ctr.*, Plaintiff is opposing the motion to compel arbitration by arguing that the Arbitration Agreement as a whole is unenforceable, not by challenging the delegation provision specifically. Therefore, the issue is for the arbitrator.[3]

### C. The Claims Against Defendant Rachmany Are Also Subject to the Arbitration Agreement

Defendant Rachmany, the owner and chief executive officer of Dumbo Moving, is not a signatory to the Arbitration Agreement. And the Complaint asserts various claims against him personally. Nonetheless, he moves for an order sending those claims to arbitration as well. That motion is granted.

Even where individuals are "neither signatories to nor third-party beneficiaries of any agreement. . . . Courts in this and other circuits consistently have held that employees or disclosed agents of an entity that is a party to an arbitration agreement are protected by that agreement. . . . If it were otherwise, it would be too easy to circumvent the agreements by

---

[3] The court disagrees, as a personal matter, with the development at law that has closed off the courts on the basis of arbitration agreements that are not between commercial equals with equivalent bargaining power, and that are drafted for the sole purpose of submitting issues that Congress intended to be resolved than in an Article III court to a bought-and-paid-for private "judge." This may well be one such case – or it may not be. But the fact is, Plaintiff chose to do business with Dumbo, even at the cost of signing an agreement that may in the end prove to be unwise and less than protective of his otherwise enforceable rights. He is stuck with what he signed.

naming individuals as defendants instead of the entity Agents themselves." *Roby v. Corp. of Lloyd's*, 996 F.2d 1353, 1360 (2d Cir. 1993)).

"Under principles of estoppel, a non-signatory to an arbitration agreement may compel a signatory to that agreement to arbitrate a dispute where a careful review of the relationship among the parties, the contracts they signed . . . and the issues that had arisen among them discloses that the issues the nonsignatory is seeking to resolve in arbitration are intertwined with the agreement that the estopped party has signed." *Ragone v. Atl. Video at Manhattan Ctr.*, 595 F.3d 115, 127 (2d Cir. 2010) (internal quotations omitted).

Here, the Complaint alleges that Rachmany acted together with Dumbo Moving in violating minimum wage and hour laws as well as creating a hostile work environment. Specifically, Plaintiff alleges that "Rachmany was and still is in active control and management of Defendant Dumbo and acts directly and indirectly in the interest of the Defendant Dumbo in relation to the employees," (Compl. ¶ 14), and that "Defendant Rachmany was responsible for hiring and firing, supervising, creating work schedules, determining rates of pay and assigning work tasks for Plaintiff and all others similarly situated at Defendant Dumbo. (*Id.* ¶ 28). All allegations in the Complaint are then asserted against "Defendants," inclusive of Rachmany and Dumbo Moving.

In sum, the facts underlying Plaintiff's allegations against Dumbo Moving are also asserted and overlap with those against Rachmany, and all allegations arise out of and relate to Plaintiff's employment with Dumbo Moving. Therefore, the claims against Rachmany will also go to arbitration.

## CONCLUSION

Defendants' motion to compel arbitration is GRANTED, and these proceedings are stayed under 9 U.S.C. § 3 until 30 days after an award is entered. The prevailing party is directed to move to confirm the award within thirty days of its entry. The court will not keep the case open forever.

The Clerk of Court is directed to close the motion at Docket Number 14. This shall constitute the written opinion of the Court.

Dated: January 9, 2023

_____
U.S.D.J.

BY ECF TO ALL PARTIES