UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------------X
MILIJA BRKIC, *individually and on behalf of others
Similarly situated*

                                                                          Case No.: 1:22-cv-07029-CM

                        Plaintiff,

      -against-

DUMBO MOVING AND STORAGE INC. and
LIOR RACHMANY

                        Defendants.
----------------------------------------------------------------------X

## PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF HIS MOTION FOR RECONSIDERATION OF THIS COURT'S JANUARY 9, 2023 ORDER

Adam P. Grogan, Esq.
**BELL LAW GROUP, PLLC**
116 Jackson Avenue
Syosset, New York 11791
516.280.3008
apg@belllg.com

*Attorneys for Plaintiff and putative class and collective*

# TABLE OF CONTENTS

|   | *Page* |
|---|---|
| TABLE OF AUTHORITIES | ii, iii |
| PRELIMINARY STATEMENT | 1 |
|     Motion for Reconsideration of January 9, 2023 Decision and Order Granting Defendants Motion to Compel Arbitration | 1 |
| STANDARD OF REVIEW | 1 |
| STATEMENT OF FACTS | 2 |
| ARGUMENT | 7 |
|     A. Federal Rule of Civil Procedure 54(b) Allows Plaintiff to File This Motion for Reconsideration | 7 |
|     B. Plaintiff's Motion is Timely | 8 |
|     C. There Has Been An Intervening Change of Controlling Law | 9 |
|         1. The Federal Arbitration Act | 9 |
|         2. Complainant's Employment Agreement was a "Contract of Employment" | 10 |
|         3. Plaintiff was a Transportation Worker | 11 |
| CONCLUSION | 15 |

# TABLE OF AUTHORITIES

*Cases*                                                                  *Page*

Analytical Surveys, Inc. v. Tonga Partners, L.P.,
684 F.3d 36, (2d Cir. 2012) .................................................................................................. 1

Bissonnette v. LePage Bakeries Park St., LLC,
144 S. Ct. 905 (2024) .............................................................................................. 8, 9, 12

Cir. City Stores, Inc. v Adams,
532 U.S. 105, 121 S. Ct. 1302 (2001) .................................................................................. 9

Cohen v. UBS Fin. Servs.,
2014 U.S. Dist. LEXIS 8017 (S.D.N.Y. 2014) .................................................................... 7

Digital Equipment Corp. v. Desktop Direct, Inc.,
511 U.S. 863 (1994) ............................................................................................................ 6

Gabay v. Roadway Movers, Inc.,
671 F.Supp 3d 371 (S.D.N.Y. 2023) .................................................................. 8, 9, 10, 11, 12

In re Facebook, Inc. IPO Sec. & Derivative Litig.,
43 F. Supp. 3d 369 (S.D.N.Y. 2014) .................................................................................... 1

In re Terrorist Attacks on September 11, 2001,
2023 U.S. Dist. LEXIS 20785 (S.D.N.Y. 2023) .................................................................. 8

Kolel Beth Yechiel Mechil of Tartikov, Inc. v. YLL Irrevocable Trust,
729 F.3d 99 (2d Cir. 2013) ............................................................................................. 1, 7

Kumaran v. Nat'l Futures Ass'n,
2023 U.S. Dist. LEXIS 74469 (S.D.N.Y. 2023) .................................................................. 8

Lowinger v. Morgan Stanley & Co. LLC,
841 F.3d 122 (2d Cir. 2016) ................................................................................................ 1

New Prime Inc. v. Oliveira,
139 S. Ct. 532 (2019) ................................................................................................... 9, 10

Official Comm. Of Unsecured Creditors of Color Tile, Inc., v. Coopers & Lybrand, LLP,
322 F.3d 147 (2d Cir. 2003) ................................................................................................ 7

Raymond v. Mid-Bronx Haulage Corp.,
2017 U.S. Dist. LEXIS 225475 (S.D.N.Y. 2017) ............................................................ 6, 7

Schoolcraft v. City of New York,
298 F.R.D. 134 (S.D.N.Y. 2014) ......................................................................................... 1

Shrader v. CSX Transp., Inc.,
70 F.3d 255 (2d Cir. 1995) ............................................................................................. 1, 7

Southwest Airlines Co. v. Saxon,
142 S. Ct. 1783 (2022) ................................................................................................ 10, 12

United States v. LoRusso,
695 F.2d 45 (2d Cir. 1982) ............................................................................................... 6

**Other Authorities**                                                                      *Page*

§§ 650 et seq .................................................................................................................. 2
29 U.S.C. §§ 201 et seq. ................................................................................................. 2
9 U.S.C. § 1 .................................................................................................................... 9
9 U.S.C. § 2 .................................................................................................................... 9
Fed.R.Civ.P. 54(b) ......................................................................................................... 6
Local Rule 6.3 ................................................................................................................ 7

# PRELIMINARY STATEMENT

## Motion for Reconsideration of January 9, 2023 Decision and Order Granting Defendants' Motion to Compel Arbitration

Plaintiff respectfully submits his motion for reconsideration regarding the Decision and Order issued by this Court dated January 9, 2023, granting Defendant's Motion to Compel Arbitration (ECF No. 25). Because there has been "an intervening change of controlling law," and in order to "prevent manifest injustice," reconsideration is warranted. *Kolel Beth Yechiel Mechil of Tartikov, Inc. v. YLL Irrevocable Trust,* 729 F.3d 99, 108 (2d Cir. 2013).

## STANDARD OF REVIEW

Plaintiff moves for reconsideration under Local Rule 6.3 which is governed by the same standards as Federal Rule of Civil Procedure 54(b). *In re Facebook, Inc. IPO Sec. & Derivative Litig.,* 43 F. Supp. 3d 369, 373 (S.D.N.Y. 2014), *aff'd* sub nom; *see also Lowinger v. Morgan Stanley & Co. LLC,* 841 F.3d 122 (2d Cir. 2016)… "reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked." *Analytical Surveys, Inc. v. Tonga Partners, L.P.,* 684 F.3d 36, 52 (2d Cir. 2012), as amended (July 13, 2012) (*quoting Shrader v. CSX Transp., Inc.* 70 F.3d 255, 257 (2d Cir. 1995). Alternatively, the Court should grant a motion for reconsideration if the moving party demonstrates… "the need to correct a clear error or prevent manifest injustice." *Facebook,* 43 F. Supp. at 373 (*quoting Schoolcraft v. City of New York,* 298 F.R.D. 134, 136 (S.D.N.Y. 2014).

Here, Plaintiff respectfully submits that the Court must deny reconsider the Motion due to an intervening change of controlling law and the need to prevent a manifest injustice upon the Plaintiff.

1

## STATEMENT OF FACTS

This is a wage and hour and retaliation action under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 *et seq.*; New York Labor Law ("NYLL"), §§ 650 *et seq;* and the New York City Human Rights Law in which Plaintiff alleges that while working as an employee of Defendants he was not paid, *inter alia*, minimum wage, overtime wages, spread of hours compensation, was not provided wage payment statements and documentation under New York's Wage Theft Prevention Act, and was subject to a hostile work environment.

Defendants are the owners and/or operators of a moving company known as "Dumbo Moving and Storage," located at 15 North Oxford St. Brooklyn, New York and have operated Dumbo for over sixteen (16) years and have employed in excess of one hundred (100) workers. (See Complaint at ¶¶19-20).

Plaintiff worked for Defendants as a mover and representative from September 1, 2018, through January 10, 2022. Upon Plaintiff commencing employment with Defendants, Plaintiff was told by Defendants that he would need to open his own "dummy" company so that he could be paid as an independent contractor. In fact, Defendants directly opened companies for Plaintiff, as well as all of their other employees so that the employees could be paid as independent contractors and so that Defendants could avoid payroll taxes and the payment requirements of employees under both the FLSA as well as New York State laws. (See Complaint at ¶¶21-23).

Throughout his employment, Plaintiff, and all other similarly situated employees and former employees were subject to extreme exploitation by the Defendants. Specifically, each week Plaintiff was required to work a strenuous schedule working no less than fifty-five (55) hours per week and as much as one hundred and four (104) hours per week. Irrespective of the

number of hours he worked per week, Plaintiff was paid only on a commission basis when Defendants felt like paying Plaintiff which many times amounted to less than minimum wage and was never paid for overtime for any hours worked over forty (40). Plaintiff was also never paid spread of hour wages and was consistently subjected to a hostile work environment based upon his ethnicity. (See Complaint at ¶24).

Plaintiff, and all other similarly situated employees and former employees were paid commissions based upon the whims of Defendants which were not paid with any type of consistency. Furthermore, upon the whims of Defendants, Defendants would take deductions out of any payments made to Plaintiff and other similarly situated employees and former employees subjectively for things such as, but not limited to, a bad customer review. These deductions and other fixed monthly deductions were taken without the consent of Plaintiff or others similarly situated. (See Complaint at ¶¶25-26).

At all relevant times, Defendant Rachmany was responsible for hiring and firing, supervising, creating work schedules, determining rates of pay and assigning work tasks for Plaintiff and all others similarly situated at Defendant Dumbo. At all relevant times, each of the Defendants maintained control, oversight, and authority over the Plaintiff, and all other similarly situated employees in the terms and conditions of Plaintiff's employment and payment of wages and were Plaintiff's employer as defined under the FLSA and NYLL. The work performed by Plaintiff and all other similarly situated employees was non-exempt work, as that term is used and defined in the U.S. Department of Labor's (DOL) regulations promulgated under the FLSA and NYLL. (See Complaint at ¶¶28-30).

Plaintiff was required to be paid a minimum wage rate of (a) $13.00 per hour for all hours worked from September 1, 2018, through December 31, 2018, (b) $15.00 per hour from January

1, 2019, through Plaintiff's termination on January 10, 2022, pursuant to NYLL § 652. Defendants regularly failed to pay Plaintiff and all other similarly situated employees the applicable minimum wage throughout their employment in violation of the FLSA and NYLL. (See Complaint at ¶¶31-32).

Plaintiff and all others similarly situated were entitled to be paid at least one and one-half times their respective regular rate of pay and/or the minimum wage rate for each hour in excess of forty (40) hours that Plaintiff and all others similarly situated worked in any workweek pursuant to the FLSA § 207 and 12 NYCRR § 142-2.2. Throughout his employment, Plaintiff worked in excess of forty (40) hours per workweek and was entitled to receive overtime wages. ((See Complaint at ¶¶33-34).

At no time during his employment was Plaintiff and all other similarly situated employees paid one and one-half times their regular hourly work rate and/or the minimum wage rate for any hours that Plaintiff worked in excess of forty (40) per workweek, in violation of the FLSA and NYLL. (See Complaint at ¶35).

Plaintiff and all other similarly situated employees were entitled to be paid one additional hour's pay at the minimum wage rate for every day that Plaintiff worked a spread of hours that exceeded ten (10) hours or a shift in excess of ten (10) hours, pursuant to 12 NYCRR § 142-2.4. Throughout his employment, Plaintiff and all other similarly situated employees worked shifts in excess of ten (10) hours per day and were entitled to receive spread of hours wages. (See Complaint at ¶¶36-37).

Throughout his employment, Plaintiff and all other similarly situated employees were not paid an additional hour's pay at the basic minimum hourly wage rate for every day that Plaintiff

worked a spread of hours that exceeded ten (10) hours, or a shift in excess of ten (10) hours, in violation of the NYLL and NYCRR. (See Complaint at ¶38).

At all relevant times, Plaintiff and all other similarly situated employees were entitled to wage statements indicating the regular and overtime rate of pay, the basis of the rate of pay, the dates covered by the payment, the name, address and phone number of the employer, and itemized allowances and deductions. (See Complaint at ¶39).

At all relevant times, Plaintiff and all other similarly situated employees were entitled to Wage Theft Prevention Act notifications. At no time during his employment were Plaintiff and all other similarly situated employees provided with wage statements and WTPA notifications. (See Complaint at ¶¶40-41).

Throughout Plaintiff's employment, Defendants would provide Plaintiff and all other similarly situated employees with sums of money which were to be provided to other employees who had not yet set up their "dummy" companies. Upon receipt of this money, Defendants ordered Plaintiff to provide the money to these other employees without "dummy" companies so that it would not appear that Defendants were paying employees and could maintain the charade that all of their employees were independent contractors. Defendants intentionally misclassified Plaintiff and other employees similarly situated as independent contractors. (See Complaint at ¶¶42-44).

Plaintiff was also forced to endure a hostile work environment throughout his employment with Defendants. Defendants engaged in activities which created an objectively hostile and abusive working environment for Plaintiff, including, but not limited to, subjecting Plaintiff to derogatory comments about his nationality of Serbian as well as threatening

comments and treatment and being subject to derogatory remarks. Defendants also continually discussed sexual comments throughout Plaintiff's employment. (See Complaint at ¶116).

Since the previous motion was decided, there has been a number of decisions issued both by this court and the United States Supreme Court that control these issues and would greatly affect the original outcome of Defendants' motion to compel arbitration. Namely, that Plaintiff, as a transportation worker "clearly in the business of moving people and freight," is exempt from the Federal Arbitration Act and thus cannot be compelled to arbitrate his claims against Defendants.

## ARGUMENT

**A. Federal Rule of Civil Procedure 54(b) Allows Plaintiff to File This Motion for Reconsideration**

Federal Rules of Civil Procedure ("FRCP") "allows for reconsideration in the district court's equitable discretion." *Raymond v. Mid-Bronx Haulage Corp.*, 2017 U.S. Dist. LEXIS 225475 (S.D.N.Y. 2017). As the decision on Defendants' motion to compel arbitration was a non-final judgment, and this action remains open, the decision "may be revised at any time before the entry of a [final judgment]." Fed.R.Civ.P. 54(b). "So long as the district court has jurisdiction of over the case, it possesses inherent power over interlocutory orders, and can reconsider them when it is consonant with justice to do so." *United States v. LoRusso,* 695 F.2d 45, 53 (2d Cir. 1982). This Court has previously held that a decision on a motion to compel arbitration is not a final order. *Raymond v. Mid-Bronx Haulage Corp.,* 2017 U.S. Dist. LEXIS 225475 (S.D.N.Y. 2017). This is because a "final order is a decision that ends the litigation on the merits and leaves nothing more for the court to do but execute the judgment." *Id.*, citing *Digital Equipment Corp. v. Desktop Direct, Inc.,* 511 U.S. 863, 867 (1994). Thus, this motion pursuant to Rule 54(b) is both permissible and appropriate.

It is true that "where litigations have once battled for the court's decision, they should neither be required, nor without good reason permitted, to battle for it again." *Official Comm. Of Unsecured Creditors of Color Tile, Inc., v. Coopers & Lybrand, LLP,* 322 F.3d 147, 167 (2d Cir. 2003). However, "a strong likelihood of reversal [on appeal] exists, and thus reconsideration should be granted, where there is an intervening change of controlling law … or [a] a need to correct a clear error or prevent manifest injustice." *Raymond, supra,* (quoting *Kolel Beth Yechiel Mechil of Tartikov, Inc. v. YLL Irrevocable Trust,* 729 F.3d 99, 108 (2d Cir. 2013)). "A party can generally establish clear error or manifest injustice by pointing to controlling decisions or data that the court overlooked." *Raymond, supra* (quoting *Shrader v. CSX Transp., Inc.* 70 F.3d 255, 257 (2d Cir. 1995)).

Here, as explained more fully below, there have been a number of controlling decisions issued since this prior motion decided that would affect the outcome of the motion. Thus, Plaintiff's motion for reconsideration should be granted, and Defendants' prior motion to compel arbitration should be denied in its entirety.

### B. Plaintiff's Motion is Timely

While Local Rule 6.3 advises that motions for reconsideration "must be served within 14 days after the entry of the court's order being challenged," this is only true "[u]nless otherwise provided by the court or by statute or rule." Local Rule 6.3. However, this Court has noted that FRCP 54's language "providing that any order subject to the Rule "may be revised at any time before the entry of a judgment," motions for reconsideration pursuant to FRCP 54 should be addressed "on the merits." *Cohen v. UBS Fin. Servs.*, 2014 U.S. Dist. LEXIS 8017 (S.D.N.Y. 2014) (holding that a motion for reconsideration of a decision compelling arbitration filed outside of the 14-day limit pursuant to Local Rule 6.3 was timely and proper because of the

language of FRCP 54 and should be decided on the merits); *Kumaran v. Nat'l Futures Ass'n*, 2023 U.S. Dist. LEXIS 74469 (S.D.N.Y. 2023)(holding that a motion for reconsideration of a motion to compel arbitration is beholden to FRCP 54, and not FRCP 60(b), as it is not a final order, and accepting the motion for reconsideration outside of the 14-day limit proscribed by Local Rule 6.3 and deciding the motion on the merits); *In re Terrorist Attacks on September 11, 2001*, 2023 U.S. Dist. LEXIS 20785 (S.D.N.Y. 2023)(finding that the time limit set by Local Rule 6.3 does not apply to a motion for reconsideration under FRCP 54 and deciding the motion on the merits).

Thus, based on numerous decisions from this Court, a motion for reconsideration of an order compelling arbitration is not beholden to Local Rule 6.3's 14-day time limit, as an order compelling arbitration is non-final and is thus made pursuant to Rule 54, and therefore this motion is timely should be decided on the merits.

### C. There Has Been An Intervening Change of Controlling Law

Since the underlying motion was decided on January 9, 2023, this Court has issued a decision that is near-identical to this one, in *Gabay v. Roadway Movers, Inc.*, which found that that Plaintiff, the manager of long-distance moving for a moving company was exempt from the Federal Arbitration Act as he was "directly involved on a daily basis in the transportation of household goods across state or international borders." *Gabay v. Roadway Movers, Inc.*, 671 F.Supp 3d 371 (S.D.N.Y. 2023). Subsequently, the United States Supreme Court issued a decision just this year that found that an exempt employee "must at least play a direct and necessary role in the free flow of goods across borders." *Bissonnette v. LePage Bakeries Park St., LLC,* 144 S. Ct. 905 (2024).

These decisions issued after the January 9, 2023 order compelling arbitration was issued fundamentally changes the issues underlying Plaintiff's claims against Defendants and clearly explain, as more fully explained below, that Plaintiff is exempt from the Federal Arbitration Act and cannot be compelled to arbitrate his claims against Defendants. Prior to the decisions in *Gabay* and in *Bissonnette*, the application of the Federal Arbitration Act exemption to employees of moving companies was ambiguous and unclear, but because of the instructive guidance of this Court and the United States Supreme Court, it is clear that Plaintiff is exempt from the provisions of the Federal Arbitration Act. Thus, there has been an intervening change of controlling law, and reconsideration of the prior order is appropriate and warranted.

1. **The Federal Arbitration Act**

Section 2 of the Federal Arbitration Act ("FAA") states that commercial "agreement[s]… to submit to arbitration" are generally "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract…." 9 U.S.C. § 2. However, Section 1 of the FAA provides that "nothing herein contained shall apply to contracts of employment of seamen, railroad employees, or any other class of workers engaged in foreign or interstate commerce." 9 U.S.C. § 1. This section has been held to apply only narrowly to "contracts of employment of transportation workers," as opposed to all employment contracts of those engaged in foreign or interstate commerce. *Cir. City Stores, Inc. v Adams,* 532 U.S. 105, 119, 121 S. Ct. 1302 (2001); The United States Supreme Court has stated that this exemption applies regardless of whether or not the "contract of employment" was between an employer and an employee or an independent contractor. *New Prime Inc. v. Oliveira,* 139 S. Ct. 532 (2019)(The Supreme Court found that "Congress used the term 'contracts of employment' in a broad sense to capture any contract for the performance of work by workers.").

Following that decision, the Supreme Court defined what was considered a "transportation worker" within the meaning of § 1 of the FAA, finding that the definition of the relevant class of workers is based on the "actual work that the members of the class, as a whole, typically carry out." *Southwest Airlines Co. v. Saxon,* 142 S. Ct. 1783 (2022). The Supreme Court held that an employee who "frequently loads and unloads cargo" is considered a "transportation worker." The Supreme Court went further and made clear that "any class of workers directly involved in transporting goods across state or international borders falls within § 1's exemption." *Id.* The Supreme Court specifically rejected a more narrow reading that would define transportation workers as only those who "physically move goods or people across foreign or international boundaries – pilots, shop crews, locomotive engineers, and the like…" *Id.*

### 2. Complainant's Employment Agreement was a "Contract of Employment"

Assuming, *arguendo*, that the employment agreement between Complainant and Defendant was valid, it was nonetheless a contract of employment as that term is used in Section 1 of the FAA. In *New Prime Inc. v. Oliveira,* the Supreme Court explicitly stated that the term "contract of employment" is used in a broad sense to capture any contract for the performance of work by workers. *Id.,* 139 S. Ct. 532 (2019). This is true regardless of whether or not the employed party was an employee or an independent contractor. *Gabay v. Roadway Movers, Inc.*, 671 F.Supp.3d 371 (S.D.N.Y. 2023). This is also true regardless of whether or not the arbitration agreement is considered to be separate from the employment agreement as a whole. *Id.*("if the court did not consider the Arbitration Agreement as part of the contract of employment, it would be reading the § 1 exemption in a manner that completely eviscerates its purpose … [t]he court explained what would happen if the court adopted the employer's theory [that the arbitration

agreement was separate from the employment agreement]: An otherwise covered employer could circumvent section one [of the FAA] by simply presenting employees with a contract outlining all terms and conditions of employment, followed by a separate arbitration agreement, even if that agreement compels arbitration of employment disputes. Congress could not have intended covered employers to avoid the exclusion so easily.).

Thus, Plaintiff's agreement was a "contract of employment" pursuant to § 1 of the FAA, regardless of whether or not he is found to have been an independent contractor or an employee.

### 3. Plaintiff was a Transportation Worker

This Court has clearly articulated that a moving company like Defendant is "clearly in the business of moving people and freight." *Gabay v. Roadway Movers, Inc.*, 671 F.Supp.3d 371 (S.D.N.Y. 2023). The next question is whether or not Plaintiff falls within a class of workers that is engaged in interstate commerce under the standard set by the Supreme Court in *Saxon*. Complainant has alleged that he was employed as a mover and representative for Defendant. See Exhibit "A," affidavit of Plaintiff, Milija Brkic. Additionally, *see, generally,* Plaintiff's Complaint at Dkt. No. 1. As a part of both his work as a mover and as a representative, Plaintiff was engaged in the business of moving freight interstate, both as a part of physically loading trucks with cargo and transporting them across state lines to either a customer's residence or to Defendant's storage facilities in North Bergen, New Jersey. See, Exhibit "A." Additionally, as a sales representative, he contracted with clients on behalf of Defendants for the provision of transportation services across the United States. *Id.* Plaintiff also, as a part of his sales duties, planned moves for customers, including pickup date and time, drop-off date and location, list of items to be moved, taking payments, managing and assisting drivers and other personnel in the event of unanticipated issues while transporting shipments on interstate routes such as road

11

closures or inaccessibility, ensured high standards of customer service, and similar administrative functions within the company.

With regard to his responsibilities as a mover, physically transporting cargo across state lines, Plaintiff is very clearly a "transportation worker" for purposes of § 1 of the FAA. With regard to his sales representative duties as well, the Southern District of New York has explicitly stated that these responsibilities also identify a worker as a "transportation worker" for purposes of the FAA. *See Gabay v. Roadway Movers, Inc.*, 671 F.Supp.3d 371 (S.D.N.Y. 2023). The Supreme Court in *Saxon* rejected a narrow view of the § 1 exemption that would limit the definition of "transportation workers" exclusively to those who "physically move goods or people across foreign or international boundaries – pilots, ship crews, locomotive engineers, and the like…" *Saxon*, 142 S. Ct. at 1789 (2022). The Supreme Court would later expand on this by stating that "any exempt worker must at least play a direct and necessary role in the free flow of goods across borders." *Bissonnette v. LePage Bakeries Park St., LLC,* 144 S. Ct. 905 (2024). Here, both as a part of his direct moving duties and his sales duties, Plaintiff played a direct and necessary role in the free flow of good across borders. As it pertains to his moving duties, Plaintiff directly transported cargo across state lines. See Exhibits "A" and Plaintiff's Complaint at Dkt. No. 1. With regard to his sales duties, Plaintiff contracted with customers for the transportation of cargo across state lines, planning moves for customers, including pickup date, time, and location, drop-off date and location, list of items to be moved, and taking payment. As such, under the standards set by the Supreme Court in *Saxon* and *Bissonnette,* Plaintiff is exempt from the provisions of the FAA pursuant to § 1. This has been directly addressed and applied to moving companies by the Southern District of New York in *Gabay v. Roadway Movers, Inc.*, even as applied to those employees who do not directly transport the goods as Plaintiff did. *Id.*

## CONCLUSION

For the foregoing reasons, there has been an intervening change of controlling law, and as such, Plaintiff falls under the exemption that covers "contracts of employment" for "transportation workers" under § 1 of the FAA and in order to prevent manifest injustice, reconsideration is warranted.

Dated: Syosset, New York
August 23, 2024

Respectfully submitted,

*Adam P. Grogan*
Adam P. Grogan, Esq.
**BELL LAW GROUP, PLLC**
116 Jackson Avenue
Syosset, New York 11791
516.280.3008
apg@belllg.com

*Attorneys for Plaintiff and putative class and collective*